## 1819

The STATE, Respondent v. Timothy Sean GOOD, Appellant.

(417 S.E. (2d) 643)

Court of Appeals

*Chief Atty. David I. Bruck* and *Asst. Appellate Defender Robert M. Dudek*, both of *S.C. Office of Appellate Defense*, Columbia, *for appellant.*

*Atty. Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr.,* and *Norman Mark Rapoport*, Columbia, and *Sol. Donald V. Myers*, Lexington, *for respondent.*

Heard April 15, 1992.

Decided May 11, 1992.

GOOLSBY, Judge:

Timothy Sean Good (Timothy) appeals his convictions for two counts of murder and armed robbery, grand larceny of a motor vehicle, and criminal conspiracy. Although Timothy raises three issues on appeal, we need discuss only the issue relating to the exclusion of certain testimony. We reverse the convictions for murder, armed robbery, and criminal conspiracy and remand for a new trial on these charges. We leave intact Timothy's conviction for grand larceny of a motor vehicle, if indeed Timothy challenged it on appeal.

Timothy, a fifteen-year old, and his twin brother Craig Layman Good (Craig), who separately appeals, were each found guilty of murdering and robbing their grandmother and their father, of conspiracy to murder and rob them, and of grand larceny of their grandmother's and her husband's truck. The murders and robberies took place inside a camper trailer owned by the grandmother.

During the trial, each brother blamed the other for the murders and robberies. Timothy testified he as outside the camper shaking a rug clean and his brother was inside the camper when his grandmother and father were killed. He testified he did not kill and rob them and did not conspire to do so. Craig, on the other hand, testified he heard shots as he stepped inside the camper after having fed some dogs, saw his grandmother and father fall, and saw his brother had "the gun."

At trial, the trial judge conducted an *in camera* hearing on the admissibility of testimony from Timothy Harness (Harness), a maintenance supervisor, an uncle of the twins and, for a time, their guardian *ad litem*, that he heard Craig say he and a black man were inside the camper and Timothy was outside the camper when the murders occurred. Craig objected to Harness' testimony, which was offered by Timothy, asserting Harness could not testify against him because Harness was his guardian. The trial judge excluded the evidence, saying, "He can't tell it, period. If I'm wrong, they can straighten it out."

The state took no position at trial on the admissibility of the challenged testimony. It now contends, however, the testimony is inadmissible hearsay and is a privileged communication between a guardian *ad litem* and an infant whose interests the guardian represented.

We disagree with both contentions.

As to the trial judge's exclusion of the testimony as inadmissible hearsay, the statement ascribed to Craig, which is inconsistent with his contentions at trial, is in the nature of an admission and, therefore, should have been admitted under the well-recognized exception to the hearsay rule that permits an out-of-court admission of a criminal defendant to be related by a witness to whom the admission was made. *State v. Lawson,* 310 N.C. 632, 314 S.E. (2d) 493 (1984); *see State v. Shorter,* 85 S.C. 170, 171, 67 S.E. 131 (1910) (admissions of a party in interest are received as evidence).

As to the trial judge's exclusion of the testimony as a privileged communication, assuming it was made, as claimed, to the uncle while he served as Craig's guardian *ad litem,* nothing in either the common law or statute renders a communication made by an infant to the infant's guardian *ad litem* privileged under the circumstances here involved. *See* W. REISER, A COMPARISON OF THE FEDERAL RULES OF EVIDENCE WITH SOUTH CAROLINA LAW 27-29 (4th ed. 1990) (listing and discussing the testimonial privileges recognized in South Carolina); *cf. Senear v. The Dailey Journal-American, a Division of Longview Publishing Co.,* 97 Wash. (2d) 148, 641 P. (2d) 1180 (1982) *(en banc)* (the common law does not favor testimonial privilege because testimonial duty is the standard); 8 J. WIGMORE, EVIDENCE § 2192, at 70 (McNaughton rev. ed. 1961) ("[T]he public . . . has a right to every man's evidence.").

Moreover, we are especially reluctant to create a testimonial privilege between a guardian *ad litem* and an infant in a situation where the legislature has by implication expressed an intention to exclude other privileges from either testifying or producing evidence by specifically prescribing an instance in which particular evidence obtained by a guardian *ad litem* is made confidential. *See Re Story,* 159 Ohio St. 144, 50 Ohio Op. 116, 111 N.E. (2d) 385, 36 A.L.R. (2d) 1312 (1953) (a legislative declaration of a policy against privileges from testify-

ing or producing evidence should be considered in determining the existence of a privilege and only in extreme cases should courts recognize instances of privilege where they have not been created by a statute or constitutional provision); 81 Am. Jur. (2d) *Witnesses* § 141, at 182 (1976) ("Privileges constituting exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.").

Here, the legislature specifically provided that a guardian *ad litem* appointed to represent the best interests of a child in child abuse and neglect proceedings under the South Carolina Guardian *ad Litem* Program is entitled to all confidential reports and information collected and maintained by the State Department of Social Services, local child protection service agencies, and the Central Registry of Child Abuse and Neglect and it made confidential, except in particular instances, all reports and information collected by a guardian *ad litem* pursuant to the program. S.C. Code Ann. § 20-7-125 to 126 (Supp. 1991); *cf. In Re Maraziti*, 233 N.J. Super. 488, 559 A. (2d) 447 (N.J. Super. Ct. App. Div. 1989) (communications between minor children and a law guardian, who by statute must be an attorney admitted to the practice of law in the state, are protected by attorney-client privilege). By making information gathered by a guardian *ad litem* confidential only in child abuse and neglect proceedings, the legislature has indicated, albeit by implication, that information obtained by a guardian *ad litem* in other instances is not confidential and is, therefore, subject to disclosure.

■ Because the statement attributed to Craig relates directly to the issues of Timothy's guilt or innocence of the crimes of murder, armed robbery, and criminal conspiracy, and because its admission in evidence reasonably could have resolved the swearing contest between the twins in Timothy's favor, the trial judge's error in excluding the testimony *regarding the statement constitutes reversible error* as to those offenses. *See State v. Doctor*, — S.C. —, 413 S.E. (2d) 36 (1992) (wherein the Supreme Court reversed a defendant's conviction because of the trial court's erroneous exclusion of certain exculpatory hearsay evidence where the defendant's credibility was attacked and his version of the robbery for which he was on trial was disputed). Insofar as Timothy's

conviction for grand larceny of a motor vehicle is concerned, there is no reasonable possibility that the excluded statement could have affected it. *See State v. Reeves*, 301 S.C. 191, 391 S.E. (2d) 241 (1990) (where a defendant's conviction for committing a lewd act on a minor was reversed because of an erroneous admission of certain evidence and his conviction for disseminating sexually-oriented material to a minor was affirmed because the erroneously-admitted evidence could not reasonably have affected the defendant's conviction for that offense). The evidence clearly shows the larceny of the truck took place outside after the twins' grandmother and father had been killed inside the camper.

The two issues raised by Timothy that we do not discuss, the trial judge's refusal to charge accessory after the fact or murder and the exclusion of evidence that Timothy was remorseful about the deaths of his grandmother and his father, also could not have reasonably affected his conviction for grand larceny of a motor vehicle even were we to hold, and we do not, that the trial judge committed error in both these regards. *Id.*

Reversed in part, affirmed in part, and remanded.

BELL and CURETON, JJ., concur.